IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LEWIS JOHNSON,
      Petitioner,

vs.                        Case No.:  5:17cv277/MCR/EMT

MARK S. INCH,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 12).  Petitioner filed a reply (ECF No. 16).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to federal habeas relief.

---

[1] Mark S. Inch succeeded Julie L. Jones as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 12).[2]  On July 15, 2013, Petitioner entered no contest pleas, pursuant to a negotiated plea agreement, to one count of lewd or lascivious battery (a violation of Florida Statutes § 800.04(4)(a)) in Washington County Circuit Court Case No. 2012-CF-92, and one count of sexual assault on a victim over 12 years of age (in violation of Florida Statutes § 794.011(5)) in Case No. 2012-CF-169 (Ex. A at 34–38, 119–123, Ex. J).  The same day, the court accepted the pleas, adjudicated Petitioner guilty, designated Petitioner a sexual offender in both cases, and imposed a downward departure sentence, in accordance with the terms of the plea agreement, to concurrent terms of eighteen (18) months in prison, with jail credit of 483 days, to be followed by twelve (12) years of sex offender probation (Ex. A at 40–51, 53–55, 125–36, 138–40, Ex. J).  Petitioner did not appeal the judgment.

Following Petitioner's release from prison, Petitioner's probation officer filed an affidavit of violation of sex offender probation ("VOP") in both cases (Ex. A at 60–62, 145–46, 149).  Petitioner was charged with violating Condition 21, which

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (ECF No. 12).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

prohibited him from viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that were relevant to his deviant behavior pattern, unless otherwise indicated in his sex offender treatment plan. Petitioner was also charged with violating a special condition of probation, which prohibited him from accessing the internet or other computer services prior to completion of a sex offender treatment risk assessment and approval and implementation of a safety plan (*id.* at 62). The violation report alleged the following:

> On 11-25-13 at approximately 8:30 a.m., the offender reported to the Chipley Probation and Parole office and requested transfer the [sic] Texas. The offender handed me his cell phone to extract the phone number and address of his uncle, Walter Newman, for verification. While holding the phone I noticed a "Facebook" and "Photos" icon. I asked the offender if he had any photos on his phone and he replied yes. When I opened the photo gallery I observed several photo and video files titled "Facebook". I opened these files and discovered numerous photos of naked females depicted in obscene and pornographic positions. I also observed a video of a male holding an erect penis and touching his penis in such a way to maintain a state of arousal. I asked the offender if he knew the females in the photos and he relied yes but only knew their first names. He did state that all of them were over the age of 18 years. I asked the offender if he was the person holding his penis in the videos and photos and he stated yes. The offender stated that the phone was his and that he obtained it in October 2013 after his release from prison. [T]he offender was advised that he was in violation of his sex offender probation by possessing, sending and receiving these photos and videos with his phone. The offender was advised that his phone is seized for further inspection and that it may be returned to him after the disposition

of the violation.  A warrantless arrest was conducted and Officer Pope with the Chipley Police Department transported the offender to the Washington County Jail.

Photos were taken of the photos inside the phone for evidence.  Further review of the electronic messaging and social media reflects that the photos and videos were received and transmitted during the months of October and November 2013.  It is also noted that the offender solicited a person identified as "Sis" during the months of October and November 2013 to assist him in setting up a "facebook" page and specifically requested, "but you can't use my real name."  Evidence has been recovered that the offender has and was using an alias name of Lewis Yankee located in Panama City, Florida and a "facebook" home page. Due to inactivity, the phone shut down and could not be opened without a "pin" number.  I spoke with the offender at the jail and requested the "pin" number to continue inspection.  The offender stated that he forgot his "pin" number.

The offender has violated his sex offender probation by viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating material using his phone, electronic media and or other computer services.  He has further violated his supervision by accessing the internet or other computer services prior to entering treatment and having a risk assessment and safety plan completed.

(Ex. A at 60–61).

Evidentiary proceedings on the alleged violations were held July 10, 2014, at the conclusion of which the circuit court found Petitioner to have violated each of the terms of sex offender probation as alleged in the VOP affidavit (Ex. A at 74–83, Ex. B).  The court revoked Petitioner's probation in both cases and imposed concurrent sentences of fifteen (15) years of imprisonment with credit for 718 days of time served

and credit for all time served in the Florida Department of Corrections ("FDOC") and Florida State Hospital (Ex. A at 74–83, 166–74, Ex. B at 67–69).  Consolidated for purposes of appeal, Petitioner appealed both cases to the Florida First District Court of Appeal ("First DCA") (Ex. A at 176, 177).  Through counsel, Petitioner filed motion to correct sentencing error in the circuit court, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. K at 245–48).  On March 6, 2015, the circuit court granted Petitioner's motion and directed the clerk of court to amend the judgment and sentence to conform to the court's oral pronouncement that Petitioner was to receive credit for time served in the FDOC (Ex. K at 249–73).[3]  An amended judgment and sentence was rendered on March 6, 2015 (*id.* at 274–82).  The appeal proceeded in the First DCA, Case No. 1D14-3546 (*see* Exs. L, M, N).  On September 21, 2015, the First DCA per curiam affirmed the judgment without written opinion (Ex. O).  Johnson v. State, 173 So. 3d 969 (Fla. 1st DCA 2015) (Table).  The mandate issued October 7, 2015 (*id.*).

On September 30, 2015, Petitioner filed a motion for reduction or modification of sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of

---

[3] The original judgment did not include the court's directive to the FDOC to compute and apply credit for time Petitioner served in prison.

Criminal Procedure (Ex. P). The circuit court denied the motion on December 21, 2015 (Ex. Q).

On July 29, 2016, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. T at 3–14). The state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 20). Petitioner filed a timely amendment (Ex. U). The circuit court summarily denied the amended motion on March 20, 2017 (Ex. T at 22–26). Petitioner appealed the decision to the First DCA, Case No. 1D17-1474 (Ex. V). The First DCA affirmed the lower court's decision per curiam without written opinion on July 27, 2017, with the mandate issuing August 24, 2017 (Ex. X). Johnson v. State, 228 So. 3d 556 (Fla. 1st DCA 2017) (Table).

Petitioner filed the instant federal habeas action on October 27, 2017 (ECF No. 1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254. Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the <u>Williams</u> framework, on any issue presented in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See* Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court holdings. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* <u>Woods</u>, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's holdings.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  <u>Williams</u>, 529 U.S. at 409; *see* <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual

determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. See Cave v. Sec'y for Dep't of Corr., 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits

of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution

or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is

difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

## III.  PETITIONER'S CLAIMS

A. <u>Ground One:  "Defense counsel rendered ineffective assistance when he</u>
<u>failed to file a pre-trial motion to suppress a cell phone that was illegally</u>
<u>retrived [sic] by Defendant's probation office [sic] during a conference at the</u>
<u>probation office, violating Defendant's Fourth, Sixth and Fourteenth</u>
<u>Amendment rights of the United States Constitution."</u>

Petitioner contends defense counsel was ineffective for failing to file a motion

to suppress evidence obtained as a result of the probation officer's seizing Petitioner's

cell phone (ECF No. 1 at 4–5).  Petitioner alleges the probation officer grabbed his

cell phone out of his hand and started scrolling through it during Petitioner's visit to

the probation office to request transfer of his supervision to another State (*id.*).

Petitioner alleges the probation officer did not have "authority and/or permission" to

take the cell phone (ECF No. 16 at 1).  Petitioner alleges he "brought this to [defense

counsel's] attention and was assured that he would be moving to suppress this illegal

search and seizure" (*id.* at 5).  Petitioner alleges it was never proven at the VOP

hearing that the cell phone belonged to him or that he set up the Facebook page on the phone, yet defense counsel did not "object" or request reinstatement of Petitioner's probation (ECF No. 1 at 4–5; ECF No. 16 at 5–6).  Petitioner alleges if counsel had filed a motion to suppress, there is "a good probability" the court would have granted the motion and reinstated Petitioner's probation (ECF No. 1 at 4–5).  Petitioner alleges if he had known that defense counsel was not going to file a motion to suppress, he would have entered a plea agreement with the State or entered an "open plea" and taken his chances with respect to the court's sentence (*id.*).

Respondent asserts Petitioner's claim is "copied largely" from Ground One of his amended Rule 3.850 motion, and "it appears" Petitioner satisfied the exhaustion requirement (ECF No. 12 at 18, 22 n.5).  Respondent contends the state court's adjudication of Ground One was not contrary to or an unreasonable application of clearly established federal law (*id.* at 18–27).

        1.     Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the

proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. Id. (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla.

Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112).

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 694–95.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). As the court explained in Richter:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689–690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one.
> . . . .

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," *id.* at 689, 104 S. Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7, 117 s. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles [v. Mirzayance]</u>, 556 U.S. [111,] 123, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)].  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at 123, 129 S. Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Richter</u>, 562 U.S. at 105.

2.    Federal Review of State Court Decision

Petitioner presented this ineffective assistance of counsel ("IAC") claim as

Ground One of his amended Rule 3.850 motion (Ex. U at 122–25).  In the state circuit

court's written decision denying the claim, the court correctly stated the deficient

performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal

standard (Ex. T at 22–23).  The court determined that Petitioner failed to show a

meritorious basis for a motion to suppress; therefore, his allegations failed to satisfy

either prong of the <u>Strickland</u> standard (*id.* at 23–24).  The court determined that to

the extent Petitioner was challenging the sufficiency of the evidence, the claim was

procedurally barred, because such challenges were properly raised on direct appeal,

not a Rule 3.850 motion (*id.* at 23–24 & n.1). The First DCA affirmed the circuit

court's decision without written opinion (Ex. X).

The state post-conviction record included the transcript of the VOP hearing (Ex.

T at 44–113). According to the transcript, a copy of the Order of Sex Offender

Probation signed by Petitioner was admitted into evidence (*id.* at 55). The order

included the following conditions:

> (21)   Unless otherwise indicated in the treatment plan provided by a
> qualified practitioner in the sexual offender treatment program, a
> prohibition on viewing, accessing, owning, or possessing any
> obscene, pornographic, or sexually stimulating visual or auditory
> material, including telephone, electronic media, computer
> programs, or computer services that are relevant to the offender's
> deviant behavior pattern.
> . . . .
>
> **Effective for an offender whose crime was committed on or after**
> **July 1, 2005, and who are [sic] placed on supervision for violation of**
> **chapter 794, s. 800.04,** . . . a prohibition on accessing the Internet or
> other computer services until a qualified practitioner in the offender's
> sex offender treatment program, after a risk assessment is completed,
> approves and implements a safety plan for the offender's accessing or
> using the Internet or other computer services.

(Ex. A at 53–55).

At the VOP hearing, Melissa Braxton testified she is a licensed mental health

counselor (Ex. T at 50–54). Ms. Braxton testified Petitioner was referred to her by the

probation office for a general assessment to determine whether Petitioner required

treatment for a sex offense.  Ms. Braxton testified she met with Petitioner and conducted the general assessment.  She testified she reviewed with Petitioner a list of requirements for participation in her sex offender treatment program, which included not using pornography.  Ms. Braxton testified she knew that Petitioner's probation order prohibited him from going on Facebook prior to a risk assessment and safety plan, and she reminded Petitioner of this prohibition.  Ms. Braxton testified that she completed the general assessment, but had not yet completed the risk assessment or approved a safety plan.

Probation Officer Bryland Jacobs testified that Petitioner was released from the FDOC on September 14, 2013, and Petitioner met with Probation Officer Wayne Padgett on September 25, 2013, at which time Padgett instructed Petitioner on the conditions of his supervision (Ex. T at 55–81).  Jacobs testified that all probation officers are trained to read the conditions from the probation order to the probationer. Mr. Jacobs testified Petitioner acknowledged in writing that he received a copy of the probation order, that the conditions had been explained to him, and that he agreed to abide by the conditions.  Mr. Jacobs testified that the referral to Melissa Braxton was made on September 30, 2013, and Petitioner had his initial assessment with Ms. Braxton on November 17 or 18, 2013.

Mr. Jacobs testified that approximately one week later, on November 25, 2013, Petitioner came into his office and requested a transfer of his supervision to the State of Texas. Mr. Jacobs testified Petitioner asked him to contact Petitioner's uncle to verify the residence plan in Texas. Jacobs testified Petitioner activated his cell phone and handed the phone to Jacobs to extract information about Petitioner's uncle, including the address and telephone number. Jacobs testified while he was holding Petitioner's cell phone, he noticed that the phone had icons for Photos and Facebook. Mr. Jacobs testified he asked Petitioner if he had Facebook and any photos in his phone, and Petitioner responded yes. Jacobs testified he opened the Photos icon and saw photos and videos of what he believed were pornographic images. Jacobs testified he asked Petitioner the identifies of the females in the photos, and Petitioner responded by providing names of females with whom he was communicating via Facebook and text message. Copies of the images were admitted into evidence. Mr. Jacobs described eleven of the photos as images of hairless vaginas and two of the photos as images of an erect penis. Mr. Jacobs testified that one of the photos showed a female digitally penetrating herself. Petitioner admitted that one of the penis photos was of his penis.

Mr. Jacobs testified that upon looking at the Facebook icon on Petitioner's phone, he observed that Petitioner was communicating with individuals using Facebook messaging. Jacobs testified he also observed that Petitioner was messaging a person named "Sis," and in one of those messages, Petitioner asked "Sis" to help him create a Facebook page without using his real name. Jacobs testified that Facebook is a form of electronic media accessed by the internet.

Petitioner testified at the VOP hearing (Ex. T at 91–106). He testified he left school after the 10th or 11th grade. Petitioner testified he could read "a little bit," but could not read "big words." Petitioner admitted he met with Wayne Padgett on September 25, 2013. Petitioner admitted he signed a copy of the order placing him on probation, but he stated he did not read it. Petitioner testified that although Mr. Padgett instructed him on some of the conditions of his probation, Padgett did not instruct him that he could not use the internet or possess pictures of naked people. Petitioner admitted he owned the cell phone at issue, and that he bought it on or about October 9, 2013. Petitioner admitted he communicated with women via text messaging, including some of the women seen in the naked photos. Petitioner admitted that his phone contained pornographic pictures, and he admitted he took the photo of his penis.

At the conclusion of the VOP hearing, the court found that Petitioner's testimony, that Wayne Padgett did not instruct him on all of the conditions of probation, was not credible (Ex. T at 107–08).  The court determined that the testimony and exhibits satisfied the State's burden of establishing that Petitioner violated Condition 21 and the special condition charges in the violation report.

 The state post-conviction court reasonably concluded Petitioner failed to satisfy the performance and prejudice prongs of the Strickland standard.  If the search of Petitioner's cell phone was constitutional, then defense counsel was not obligated to move to suppress the evidence or dismiss the charges and a defendant is not prejudiced by counsel's failure to do so.  *See* Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); Castillo v. United States, 816 F.3d 1300, 1303–04 (11th Cir. 2016) (citations omitted).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  "'[U]nder [the] general Fourth Amendment approach' we 'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." Samson v. California, 547 U.S. 843, 848, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (first and third alterations in

original) (quoting <u>United States v. Knights</u>, 534 U.S. 112, 118, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001)). "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" <i>Id.</i> (quoting <u>Knights</u>, 534 U.S. at 118–19). In <u>Knights</u>, the Supreme Court has held that the warrantless search of a probationer, supported by reasonable suspicion and authorized by a condition of probation, is reasonable within the meaning of the Fourth Amendment. 534 U.S. at 121.[4] The Court defined reasonable suspicion as "when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." <i>Id.</i> (citing <u>United States v. Cortez</u>, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

Petitioner failed to show a reasonable probability the VOP court would have granted a motion to suppress if defense counsel had challenged Mr. Jacobs' possession of Petitioner's cell phone as a non-consensual, unlawful seizure. When presented with conflicting testimony from Petitioner and Mr. Jacobs regarding

---

[4] According to the <u>Knights</u> court, a probationer has a reduced expectation of privacy because "the probationer 'is more likely than the ordinary citizen to violate the law.'" 534 U.S. at 120 (quoting <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 880, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)). Specifically, the probationer's propensity to recidivism justifies a greater intrusion into the probationer's privacy than into the privacy of an ordinary citizen. <i>See</i> <u>Knight</u>, 534 U.S. at 118–21.

whether Petitioner was instructed on all of the conditions of his probation, the VOP court accepted Mr. Jacobs' testimony as credible and rejected Petitioner's as not credible. There is no reasonable probability the VOP court, when presented with conflicting testimony from Petitioner and Mr. Jacobs regarding whether Petitioner consented to Mr. Jacobs' taking his cell phone to view his uncle's contact information, the VOP court would have accepted Petitioner's testimony as credible and rejected Mr. Jacobs' as not credible. Furthermore, it was reasonable for defense counsel to avoid the risk of the VOP court's making a negative credibility determination regarding Petitioner's testimony at a pre-trial (i.e., pre-VOP hearing) suppression hearing, because Petitioner's credibility was critical to his defense of the VOP charges (i.e., that Wayne Padgett never read or explained the conditions of probation to Petitioner, and Petitioner was incapable of reading and understanding the conditions himself).

Additionally, defense counsel had no meritorious basis to file a motion to suppress on the ground that Mr. Jacobs had no basis to search Petitioner's cell phone after Petitioner gave it to Jacobs for Jacobs to extract the phone number and address of his uncle. Mr. Jacobs testified that when he looked at Petitioner's phone, the Facebook and Photos icons were in plain view, and when he asked Petitioner if he had

photos and Facebook on his phone, Petitioner responded yes.  This supported a reasonable suspicion or "high probability" that Petitioner violated the condition of his probation prohibiting him from accessing the internet or other computer services until a risk assessment was approved and a safety plan implemented in Petitioner's sex offender treatment program.  Because Mr. Jacobs had reasonable suspicion to search Petitioner's cell phone, the state court reasonably concluded that Petitioner failed to show that defense counsel's failure to file a motion to suppress was deficient, and Petitioner failed to show a reasonable probability the outcome of the VOP proceeding would have been different if counsel had filed a motion to suppress.

Petitioner also faults defense counsel for failing to "object" or request reinstatement of Petitioner's probation on the ground that there was no evidence that Petitioner owned the cell phone or that Petitioner set up the Facebook page.  As previously noted, Petitioner testified at the VOP hearing that he bought the phone in October of 2013 and owned it from October 9, 2013 through November 25, 2013.  Petitioner also admitted that the phone had Facebook on it, and that "Sis" set up the account for him.  Given Petitioner's admissions, defense counsel had no good faith basis to argue that there was no evidence the cell phone belonged to Petitioner or that

he did not authorize his Facebook account.  Counsel was not ineffective for failing to

make this argument.

Petitioner failed to demonstrate that the state court's adjudication of Ground

One was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not

entitled to habeas relief on Ground One.

> B.    <u>Ground Two</u>:  "Defense counsel rendered ineffective assistance of
> <u>counsel during Defendant's evidentiary hearing when failing to move to have</u>
> <u>Defendant [sic] cell phone returned to him that was illegally retrived [sic] by</u>
> <u>his probation officer during an office visit, thus violating Defendant's Sixth and</u>
> <u>Fourteenth Amendments [sic] guaranteed by the United States Constitution."</u>

Petitioner expressly abandoned this claim (*see* ECF No. 16 at 6).

> C.    <u>Ground Three</u>:  "Defense counsel rendered ineffective assistance when
> <u>failing to move for a downward departure sentence due to Defendant's serious</u>
> <u>mental health issues in which he had already been admitted to the state hospital,</u>
> <u>thus violating Defendant's Sixth and Fourteenth Amendments [sic] to the</u>
> <u>United States Constitution."</u>

Petitioner alleges after his arrest for the VOP (on November 25, 2013), the

court ordered Petitioner to be evaluated by a mental health professional at Florida

State Hospital to determine if Petitioner was competent to proceed with VOP

proceedings (ECF No. 1 at 8–9).  Petitioner alleges a professional from the hospital

filed a report stating that Petitioner was competent to proceed (*id.*).  Petitioner alleges

the report also indicated that he "had some mental issues" and would have been

eligible to participate in a "dual diagnostic treatment program" instead of imprisonment (*id.*). Petitioner alleges defense counsel assured him that he would argue for either placement in a "Dual Diagnostic Facility" or a downward departure sentence based upon Petitioner's mental health issues, pursuant to Florida Statutes § 921.0026(2)(c)–(d), but counsel failed to do so (ECF No. 1 at 8–9; ECF No. 16 at 9). Petitioner contends there is a "good probability" he would have received a downward departure sentence if defense counsel had argued for one (ECF No. 16 at 10).

Respondent asserts Petitioner's claim is "copied largely" from Ground Three of Petitioner's amended Rule 3.850 motion, and "it appears" Petitioner satisfied the exhaustion requirement (ECF No. 12 at 31, 32 n.8). Respondent contends the state court's adjudication of Ground Three was not contrary to or an unreasonable application of clearly established federal law (*id.* at 32–35).

  1.  Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

  2.  Federal Review of State Court Decision

Petitioner presented this claim as Ground Three of his amended Rule 3.850

motion (Ex. U at 128–31). The state circuit court found that the transcript of the VOP

hearing refuted Petitioner's claim as follows:

> The Court was not inclined to go to the low end of the guidelines despite
> defense counsel's argument in favor of Defendant's special mental
> challenges that he faces. Rather, "[t]he Court found that because of the
> underlying charges and because there seems to be a complete disregard
> for the terms and conditions of sex offender probation, that to sentence
> to the low end of the guidelines does not sufficiently protect the
> community or deter future behavior by Mr. Johnson."

(Ex. T at 25) (citation to transcript of VOP hearing omitted). The court concluded that

Petitioner failed to satisfy either prong of the Strickland standard (id.). The First DCA

affirmed the decision without written opinion (Ex. X).

The transcript of the VOP hearing demonstrates that defense counsel argued the

following:

> MR. GRIFFITH [Petitioner's counsel]: Judge, the scoresheet
> shows him having a bunch of misdemeanors, most of it is from the
> offenses that he's on supervision for. This is his first violation of his
> supervision. He claims he doesn't understand that he was not supposed
> to be doing the activities that the Court's found that he violated his
> supervision based on. The scoresheet would indicate his lowest prison
> sentence would be 114.4 months in prison, his maximum sentence would
> be 65 years. We would ask if you feel compelled to follow the criminal
> punishment code scoresheet, that you give him a sentence as close to that
> low end, the 114.4 months. Given Mr. Johnson's special mental
> challenges that he faces, a lengthy prison sentence would not seem
> appropriate in this case.

THE COURT: All right. Well, the Court is not inclined to go to the low end of the guidelines. The court finds that because of the under lying [sic] charges and because there seems to be a complete disregard for the terms and conditions of sex offender probation, that to sentence to the low end of the guidelines does not sufficiently protect the community or deter future behavior by Mr. Johnson.

It is the Court's sentence that he will be sentenced to serve a term of 15 years in the Department of Corrections on each count, concurrent to each other.

(Ex. T at 109–10).

The VOP court indicated its awareness that Petitioner was previously determined to meet the statutory definition of mental retardation and "determined to be a mentally retarded defendant program participant" (Ex. T at 108). The VOP court was also aware that Petitioner's original sentence was a downward departure sentence—Petitioner's lowest guidelines sentence on the original charges was 109.9 months in prison, but the court accepted Petitioner's negotiated plea to a downward departure sentence of 18 months in prison followed by 12 years of sex offender probation, for the following reasons: (1) Petitioner entered a "legitimate, uncoerced" plea bargain; (2) Petitioner's capacity to appreciate the criminal nature of his conduct or to conform his conduct to the requirements of the law was substantially impaired; and (3) the victim was an initiator, willing participant, aggressor, or provoker of the incident (*see* Ex. A at 30–35). And, in arguing for a sentence at the "low end,"

Petitioner's counsel at the VOP sentencing reiterated that Petitioner had "special mental challenges."  Despite this knowledge, the VOP court refused to sentence Petitioner to the lowest guidelines sentence because of Petitioner's "complete disregard" for the conditions of his sex offender probation, and because a sentence at the low end of the guidelines was not sufficient to protect the community or deter future criminal behavior.  There is no reasonable probability the court would have imposed a downward departure sentence if defense counsel had argued for one.

Petitioner failed to demonstrate that the state court's adjudication of his IAC claim was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of <u>Strickland</u>, Petitioner is not entitled to federal habeas relief on Ground Three.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing Miller-El, 537 U.S. at 327). Here, Petitioner cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to substitute Mark S. Inch for Julie Jones as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED** and

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 13<u>th</u> day of February 2019.


                           /s/ *Elizabeth M. Timothy*
                           **ELIZABETH M.  TIMOTHY**
                           **CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**